UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KATI BUNGERT, P.P.A. JOANNE MURCKO | : CIVIL ACTION NO |
| | : 3:02CV1291(RNC) |
| VS. | : |
| THE CITY OF SHELTON, ET AL | : OCTOBER 12, 2004 |

### PLAINTIFF'S LOCAL RULE 56(b)2 STATEMENT

A.  **Response to Defendant's Local Rule 56(a)1 Statement**

1. Paragraph 1 is admitted.

2. Paragraph 2 is admitted except for that portion alleging Mr. Decho did not inform the named Defendants of such misconduct," which portion is denied.

3. Paragraph 3 is admitted.

4. Paragraph 4 is denied to the extent it alleges the Plaintiff admits that Mr. Gura spoke to the female students who had been harassing her; the Plaintiff does not know whether he spoke to those students.  (Bungert Dep. p. 30.).

5. Paragraph 5 is denied.

6. Paragraph 6 is admitted.

7. Paragraph 7 is admitted.

8. Paragraph 8 is admitted.

9. Paragraph 9 is admitted.

10. Paragraph 10 is denied.

11. Paragraph 11 is admitted.

12. Paragraph 12 is denied.

13. We have made reasonable inquiry and the information known or readily obtainable by us is insufficient to enable an admission or denial as to whether Mr. Casetelot, several other students as well as various school employees were spoken to.

14. Paragraph 14 is admitted.

15. Paragraph 15 is admitted but we have insufficient information to enable an admission or denial Mr. Castelot's denial of any involvement in this incident.

16. Paragraph 16 is denied.

17. Paragraph 17 is admitted, with the addition that the Plaintiff feared to return to an environment created by the Defendants that permitted the type of harassment she encountered. (Rosmarin Dep. p. 73-77.)

18. Paragraph 18 is admitted regarding Gura's offered accommodations at Shelton High School but we deny that he offered suitable alternative placement.

19. Paragraph 19 is admitted with the caveat that Dr. Rosmarin also requested that the

Plaintiff be transferred, upon which request the Defendants failed to act. (Rosmarin Dep. p. 31, 32 and 35.)

20.   Paragraph 20 is admitted,

21.   Paragraph 21 is admitted with the caveat that the Plaintiff opted to receive home tutoring but preferred a transfer.

22.   Paragraph 22 is admitted that Sylvester advised they could no longer provide such services.

23.   Paragraph 23 is admitted with the caveat that the Plaintiff refused escort services because it increased her danger. (Rosmarin Dep. p. 43.)

24.   Paragraph 24 is admitted with the caveat that these schools were unacceptable because one was for students with disciplinary problems and the other consisted of 98 per cent male students.

25.   Paragraph 25 is admitted.

26. We have made reasonable inquiry and the information known or readily obtainable by us is insufficient to enable an admission or denial.

4

B.     **Disputed Issues of Material Fact**

1.  The Plaintiff and her mother, Joanne Murcko, complained to the Defendants about a hostile environment at Shelton High School, in which the Plaintiff and Jesse Murcko were verbally harassed about her relationship with Jesse, and Plaintiff was later sexually and physically abused by fellow students, including Kurt Soltis and Michael Castelot.  (J. Murcko Dep. p   ; K. Bungert Dep. p.)

2.   As early as October, 2000 Kurt Soltis began making sexually harassing comments in history class about the Plaintiff's breasts.  (K. Bungert Dep. p. 23-25.)

3.  The teacher, Mr. Decho, probably heard the comments being made.  (K. Bungert Dep. p. 26.)

4.  A group of three girls also made sexually harassing comments to the Plaintiff in Decho's class which he heard, and they also made sexually harassing comments in the girls bathroom. (K. Bungert Dep. p. 26-27.)

5.  This group of girls while making sexually harassing remarks to the Plaintiff caused her to cry and then threw tissues at her, which her teacher, Decho, observed.  (K. Bungert Dep. p. 28.)

1.  The Plaintiff reported this conduct to the Principal, Mr. Gura, who said he would speak

to the girls, but the harassment continued, and it occurred "every single day". (K. Bungert Dep. p. 30, 70.)

2. As a result of the continued harassment in history class, the Plaintiff went to the nurse's office one or two times a week to avoid going to class. (K. Bungert Dep. p. 33.)

8. In or about January 12, 2001, the Plaintiff and her mother complained to the Defendants about an incident which occurred two days before in which the Plaintiff was sexually assaulted by a fellow male student, Kurt Soltis, and at that meeting with the Principal, Donald Rameia, and Housemasters Howard Gura and Piccolo, the Plaintiff and her mother complained about the hostile environment at the high school in which her daughter was being harassed by other students. (J. Murcko Dep. p.    )

9. Mrs. Murcko requested that the Plaintiff's teachers be notified of the harassment against her daughter and that study hall, which she described as a "free-for-all" environment be monitored, which the Defendants failed to do. (J. Murcko Dep. p. 21-22.)

10. In January, 2001, during a fire alarm, the Plaintiff was sexually assaulted by Soltis, as a result of which, she and her mother met with the Principal to report that incident as well as the sexual harassing by the three girls in history class, as a result of which the Plaintiff thought Soltis would be suspended from school. (K. Bungert Dep. p. 35-39, 45.)

11. At the January 12th meeting, Mrs. Murcko complained to Principal Rameia that the alarms in the school did not go off during a fire on the day the Plaintiff was assaulted because they had been turned off against protocol, in response to which Mr. Rameia stated to Mr. and Mrs. Murcko, "Here I'm trying to help your daughter, and you bring in this shit. You'll never get any help from me again." (J. Murcko Dep. p. 20-21.)

12. Gura told the Plaintiff and her mother that he would speak to Soltis' parents, but he did not, and Soltis was not suspended from school. (K. Bungert Dep. p. 40, 45.)

13. Following this incident, on March 9, 2001, six boys, including Kevin Giardini and Michael Castelot, "ganged up" on the Plaintiff and Jesse at the school bus stop in the presence of the school principals who probably saw it and engaged in a loud shouting match directed at Jesse concerning the Plaintiff and him. (K. Bungert Dep. p. 47-48; J. Murcko Dep. p. 28.)

14. The Plaintiff's parents reported this incident to the Shelton Police Department, who informed them that the Shelton SRO police officer would be informed of the incident. (J. Murcko Dep. p. 28-29.)

15. On March 12, 2001, the Plaintiff was in the hall of the high school just at the beginning of second period when she was physically assaulted by Michael Castelot, who rammed her with his shoulder, knocking her to the ground where she landed on the back of her

head, causing a concussion and contusions to her back, after which he called her a "stupid bitch." (K. Bungert Dep. p. 55-56.)

16. The Plaintiff reported this incident to Housemaster Gura that same day, and he sent her home without seeking or offering medical treatment for her. (K. Bungert Dep. p. 61.)

17. When the Plaintiff got home, she reported the incident to her mother who took her to the hospital where she was diagnosed with a concussion and contusions to her back. (Bungert Dep. p. 63.)

18. On March 13, 2001, the Plaintiff, her mother and stepfather met with Gura regarding the physical assault and other complaints, including the bus stop incident from the Friday before, and five of the six boys from the bus stop incident were identified by Jesse. (J. Murcko Dep. p. 33-34.)

19. The Plaintiff, who had drawn a sketch of the person who assaulted her, showed the sketch to Mr. Gura, and based upon that sketch, Mr. Gura said he thought he knew who it was, and took her to study hall where she positively identified Michael Castelot as the student who assaulted her on March 12th. (K. Bungert Dep. p. 65.)

20. On March 23, 2001, Kevin Giardini threatened to bring a gun to school with which to shoot Jessie, which Mrs. Murcko reported to the police and to Mr. Piccolo. (J. Murcko Dep. p. 40.)

21. A week later, Mr. and Mrs. Murcko met with Mr. Piccolo and SRO Federowitz about the gun threat, and Federowitz told them not to take it seriously. (J. Murcko Dep. p. 42.)

22. The Plaintiff's parents refused to send her back to Shelton High School, and took her on April 11th to see a psychotherapist, Rosmarin, who diagnosed her as suffering post traumatic stress disorder as a result of the continued harassment at school. (Rosmarin Dep. p. 38.)

23. Dr. Rosmarin wrote to Mr. Gura on April 12th, in which letter he told him that she was suffering from PTSD and requested that she be provided with homebound tutoring for the remainder of the school year; the school however was pushing for her to return to school and offered to provide her with an escort, which Rosmarin felt would worsen matters. (Dr. Rosmarin Dep. p. 31, 43, 47.)

24. According to Dr. Rosmarin, the school did not recognize how severe the situation was, and the Plaintiff and her parents were in fear of her returning to SHS and were seeing him to help her get "out of this situation." (Dr. Rosmarin Dep. p. 27, 30, 48.)

25. Mr. and Mrs. Murcko along with the Plaintiff met with Mr. Gura in July, 2001 to request a transfer out of SHS for the upcoming year, at which time Gura insisted that Kati

return to SHS, and Gura told her she needs to be tougher and that he would try to protect her even though he could not be with her 24 hours a day. (J. Murcko Dep. 54-55.)

26. The Defendant finally agreed at this meeting to provide homebound tutoring after the Plaintiff began crying hysterically when she was told by Gura that she should return to SHS. (J. Murcko Dep. p.54-55.)

27. In a letter dated August 20, 2001 to the Superintendent, Leon Sylvester, Dr. Rosmarin stated, " I strongly urge you to support a transfer for Kati out of the Shelton School District.  I am again seeing the emergence of symptoms associated with the traumatic events of last school year as the beginning of the new school year approaches.  Kati's apprehensions regarding her possible forced return to Shelton High School is definitely not in her best interests.  The consequences for both Kati and the school system to such an imposed solution would be high risk."  (8/20/01 Letter from Dr. Rosmarin to Dr. Sylvester.)

28. Dr. Sylvester after receiving the letter from Dr. Rosmarin wrote to Mrs. Murcko on September 4, 2001 and stated that "We continue to feel that the Shelton Public Schools can provide a supportive, non-threatening environment for Kati."  (9/4/01 Letter from Sylvester to Mrs. Murcko.)

29. Mrs. Murcko went to the school after receiving Sylvester's letter and told them that she would not return Kati to that environment, and requested that Kati be transferred to another school.

(J. Murcko, Affid.§ 6.)

    30. It was the recommendation of Dr. Rosmarin to transfer Kati out of district. Over the summer of 2001, I spoke to neighbors about Amity High School and learned that Amity accepts outside transfers. I suggested this to the school and was told they would not agree to that school for a transfer.

    31. Shelton never suggested any other school for transfer other than something in the city of Shelton called Shelton Vogue which is for kids that can't make it like children who are suspended and are causing problems and disrupting the class and being abusive. This was not acceptable to me.

    32. I was then forced to send Kati to Sacred Heart private school at my own expense because Shelton refused to educate my child as of January 25, 2002, other than having her return to the school where she had been abused, both sexually and physically, causing her to suffer psychological and emotional distress.

         PLAINTIFF

         By_____
           Joseph A. Moniz (ct04316)
           Moniz, Cooper & McCann, LLP
           100 Allyn Street
           Hartford, CT  06103
           Tel. (860) 278-0200
           Her Attorneys

## **CERTIFICATION**

  THIS IS TO CERTIFY that a copy of the foregoing was mailed, postage prepaid, this date to:

Melissa G. Melnick, Esq.
Patty G. Swan, Esq.
Renee W. Dwyer, Esq.
Gordon, Muir & Foley, LLP
Ten Columbus Boulevard
Hartford, CT  06106-1976
(860) 525-5361

         _____
           Joseph A. Moniz