UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
KATI BUNGERT, P.P.A.            :
JOANNE MURCKO,                  :
                                :
    Plaintiff,                  :
                                :
V.                              :   CASE NO. 3:02-CV-01291 (RNC)
                                :
CITY OF SHELTON, ET AL.,        :
                                :
    Defendants.                 :
```

RULING AND ORDER

Plaintiff, a former student at Shelton High School, brings this action pursuant to 42 U.S.C. § 1983 against the City of Shelton, the Shelton Board of Education, the superintendent of schools, the principal of the High School, and an assistant principal, claiming that they failed to protect her against sexual harassment and assault by her peers, in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment.[1]  The complaint also pleads claims based on state law. Defendants have moved for summary judgment on the due process claim contending that plaintiff cannot prove that their conduct was so egregious as to violate the limits imposed on governmental action by principles of substantive due process.  Plaintiff responds that she has "clearly alleged that the assaults took place in the presence [of] and with the tacit approval of school officials."  Pl.'s Obj. to Mot. for Summ. J. 14.  But she points to no evidence that any of the individual defendants was present

---

[1]  Unlike students in other cases involving peer sexual harassment, plaintiff does not rely on the Equal Protection Clause.

when abuse occurred, or ignored reports of abuse, or engaged in any other conduct that could be construed as condoning abuse. Nor does she point to evidence showing that the assaults she suffered were foreseeable.  In the absence of such evidence, I agree with the defendants that plaintiff cannot sustain her burden of proof on the due process claim.  Accordingly, the motion for summary judgment is granted, the due process claim is dismissed with prejudice, and the state law claims are dismissed without prejudice.[2]

I.   SUMMARY JUDGMENT STANDARD

Summary judgment may be granted when there is no disputed issue of fact requiring a trial and the moving party is entitled to judgment as matter of law.  Fed. R. Civ. P. 56(c).  To withstand the defendants' motion for summary judgment, plaintiff must point to evidence in the record that is at least arguably sufficient to support a verdict in her favor.  In assessing whether the evidence plaintiff relies on satisfies this test, the

---

[2] Plaintiff's due process claim may be precluded by Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 (2000), which provides a cause of action for damages against schools for deliberate indifference to peer sexual harassment. Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999). The Court of Appeals has held that the remedy provided by Title IX is the exclusive remedy under federal law against a school district and school board for failing to provide an educational environment free of sexual harassment. Bruneau ex rel. Schofield v. South Kortright Cent. Sch. Dist., 163 F.3d 749, 758-59 (2d Cir. 1998). Bruneau does not address the extent to which Title IX supplants constitutional claims against individuals, but the Court's reasoning logically requires preclusion of constitutional claims against school administrators. See Delgado v. Stegall, 367 F.3d 668, 674-75 (7th Cir. 2004). The preclusive impact of Title IX on plaintiff's due process claim has not been raised by the defendants, however, so I do not rely on it as a basis for granting summary judgment.

evidence must be viewed in a manner most favorable to her. In other words, the evidence she relies on must be credited, to the extent a jury could reasonably credit it, and any opposing evidence must be disregarded, unless a jury would be bound to accept it as true. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 151 (2000).

II.  FACTS

The evidence, viewed fully and most favorably to the plaintiff, would permit a jury to find the following facts.

In September 2000, plaintiff entered Shelton High School as a ninth grader, having recently moved to the area with her mother and siblings to live with her mother's soon-to-be husband and his son, Jesse. Prior to the move, plaintiff had been an excellent student. Within a short time after the move, she and Jesse began dating.

In October 2000, a student named Kurt Soltis made sexually harassing comments to plaintiff about the size of her breasts. Soltis was a student in plaintiff's history class, which was taught by a male teacher named Decho, who is not a defendant. Several female students in the history class also started bothering the plaintiff, both in and out of class, alluding to Soltis's comments. On one occasion, the girls made her cry in the classroom.

Plaintiff never complained to Mr. Decho about Soltis's comments or the girls' subsequent harassment, but she did report the girls' behavior to defendant Howard Gura, an assistant

principal.³  Gura said he would speak with the girls.  The girls continued to bother her, however, at one point threatening to harm her if she ever went to "see anybody about it anymore."  This threat had its intended effect in that plaintiff did not report the girls' continuing harassment to Gura or anyone else.

As a result of this harassment, plaintiff had no desire to continue to take the history class, and made no effort to do her history homework.  On a number of occasions, she avoided the class by feigning illness.  The harassment affected her grades in all her courses.

In January 2001, during a fire alarm at the school, Soltis grabbed plaintiff's breast after pretending to bump into her accidentally in front of his friends.  Plaintiff reported the assault to her mother, who arranged to meet with school officials.

Present at the meeting, in addition to plaintiff's mother and her husband, were the school principal, defendant Raymond Rameia; Gura; and another assistant principal.  During the meeting, plaintiff's mother learned that on the day of the assault, school officials turned off the fire alarm before the fire department could respond.  Plaintiff's mother has testified that when her husband pointed out to Rameia that turning off a fire alarm in a building with 1510 students violates federal law, Rameia left the room in a huff saying, "Here I'm trying to help

---

³ The evidence does not disclose whether plaintiff told Mr. Gura about Soltis's comments.

-4-

your daughter, and you bring in this shit.  You'll never get any help from me again."  After he left, the other officials apologized for his behavior.

The next day, plaintiff and her mother met with a school resource officer ("SRO") named Federowicz and filed a formal report of Soltis's assault.  The officer said he would talk to Soltis's parents.  Soltis made no more comments to plaintiff, and refrained from touching her, but still looked at her in class with a "ha ha kind of smile."

In March 2001, on a Friday afternoon, plaintiff and Jesse were waiting to board a bus to go home when they were accosted by six male students, including Michael Castelot.  The students formed a semicircle around them and yelled at Jesse in a threatening manner, "You're dating your sister."  Jesse told plaintiff to get on the bus and she did, at which point the yelling got louder.  Plaintiff's mother, her husband, and Jesse went to the police department and made a complaint against the six males but they were unable to identify any of the six by name.

The following Monday morning, plaintiff was walking in a hallway between her first and second classes when she saw Castelot approaching from the opposite direction. Recognizing him as one of the six who had ganged up on her and Jesse the previous Friday afternoon, she moved toward the wall in an attempt to avoid him, but he continued to walk toward her, pulled his shoulder back, and rammed into her as hard as he could,

striking her in the ribs.  The blow knocked her down with such force, she struck her head on the floor.  Castelot called her a "stupid bitch," then walked away.

Plaintiff went to her second class, put her head on her desk and fell asleep.  At the end of the day, she went to see Mr. Gura.  She told him about the assault and said her head hurt.  He let her get on the bus to go home without calling her mother or taking steps to ensure she got medical attention.  That night, plaintiff's mother took her to the hospital, where she was diagnosed with a concussion and contusions on her spine.

An investigation was conducted by school officials. Plaintiff identified Castelot as her assailant, but a teacher reported that he was in class when the assault occurred.  The teacher relied on an attendance chart, which indicated that, on the day of the assault, Castelot was in the teacher's classroom at or soon after the start of the second period.  This did not necessarily exclude Castelot as a suspect because the assault occurred between the first and second periods.  Nevertheless, no disciplinary action was taken against him.

As a result of Castelot's assault, plaintiff developed post traumatic stress disorder, which rendered her unable to return to Shelton High School for classes.  Defendants provided her with homebound tutoring but only for a limited period of time and refused her request for a transfer to a nearby public school.[4]

---

[4] Defendants ultimately offered to place plaintiff in either of two other schools, but one school was approximately 98% male and

Their refusal left her with no alternative but to enroll in a private school, which she did in February 2002.

III. DISCUSSION

Plaintiff brings her due process claim under 42 U.S.C. § 1983, which authorizes suits for damages against state officials for depriving a person of federal rights. She contends that the defendants may be held liable for depriving her of a right guaranteed by the Due Process Clause of the Fourteenth Amendment, which provides, "nor shall any State deprive any person of life, liberty or property, without due process of law." The protection provided by this clause is mainly procedural; it prohibits government from depriving a person of life, liberty or property without a fair decisionmaking process. But the clause has been interpreted to provide additional protection of a substantive nature against state legislation and executive action that infringes on protected rights. This substantive component of the due process guaranteed by the clause is violated when state officials engage in conduct of such an egregious nature as to shock the conscience. County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849. Negligently inflicted harm, in contrast, can never violate substantive due process. Id.

---

took children who had been in trouble elsewhere, and the other was known as a place for students nobody wanted.

Plaintiff contends that the defendants violated substantive due process by failing to protect her against the harassment and assaults to which she was subjected by the other students. Courts have been reluctant to rely on substantive due process principles to impose liability on state officials for failing to prevent a person from being injured by a third party. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)("As a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."). Exceptions have been made in cases involving persons in state custody, such as incarcerated prisoners, on the ground that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." Id. at 199-200.[5] An official's failure to protect a person in custody against a known risk of harm may violate substantive due process if it is due to deliberate indifference to the persons's welfare. Farmer v. Brennan, 511 U.S. 825, 836-37 (1994). In such a case, the official's deliberate indifference may be sufficiently egregious to satisfy the shock the conscience standard.

The Second Circuit has not been presented with a claim that

---

[5] An exception also has been recognized for children who are removed from society and placed in a foster home. Doe v. New York City Dep't of Soc. Servs., 649 F.2d 134, 141 (2d Cir. 1981); see also Nicini v. Morra, 212 F.3d 798, 808-09 (3d Cir. 2000).

school officials violated substantive due process by failing to protect a student in their care.  I have no doubt, however, that it would decline to recognize such a violation in the circumstances disclosed by the evidence in this case.  At most, the evidence might permit a finding of negligence.  But simple negligence does not violate the limits on harmful governmental conduct imposed by principles of substantive due process.  Since the evidence in the record would not support a finding of a higher degree of culpability, such as deliberate indifference, a verdict in plaintiff's favor could not be sustained.[6]

As noted at the outset, plaintiff's allegations that the individual defendants were present when abuse occurred, and ignored reports of abuse, are unsupported.  Indeed, the evidence shows that none of the individual defendants ever witnessed any abuse, and each time an instance of abuse was reported, some action was taken to try to prevent it from happening again.  Based on the evidence in the record, moreover, the defendants were unaware of any specific danger to the plaintiff, had no

---

[6] Plaintiff cites no case in which a school official's failure to prevent harm to a student in his or her care was found to violate substantive due process.  When claims like this have been presented to federal courts of appeals, the claims have failed.  Hasenfus v. LaJeunesse, 175 F.3d 68, 71-73 (1st Cir. 1999); Wyke v. Polk County Sch. Bd., 129 F.3d 560, 568-70 (11th Cir. 1997); Doe v. Hillsboro Indep. Sch. Dist., 113 F.3d 1412, 1415 (5th Cir. 1997) (en banc); Doe v. Claiborne County, 103 F.3d 495, 510 (6th Cir. 1996); Graham v. Indep. Sch. Dist. No. I-89, 22 F.3d 991, 994 (10th Cir. 1994); Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 732 (8th Cir. 1993); D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1372-73 (3d Cir. 1992) (en banc); J.O. v. Alton Cmty. Unit Sch. Dist. 11, 909 F.2d 267, 272-73 (7th Cir. 1990).

reason to foresee the Soltis and Castelot assaults, and did nothing to encourage anyone to think such assaults would be tolerated.  On this record, no reasonable jury could condemn the defendants' conduct as conscience-shocking.  See Yap v. Oceanside Union Free Sch. Dist., 303 F. Supp. 2d 284, 295-96 (E.D.N.Y. 2004).[7]

III. CONCLUSION

    Accordingly, the motion for summary judgment is granted, and the due process claim is dismissed with prejudice.  Since no other federal claim is presented, I decline to exercise supplemental jurisdiction over plaintiff's state law claims, which are dismissed without prejudice.  Judgment will enter in favor of the defendants.

    So ordered.

    Dated at Hartford, Connecticut this 14th day of October 2005.

/S/<br>Robert N. Chatigny<br>United States District Judge

---

[7] Research shows that the key to preventing peer harassment and assault in schools lies in promoting an environment in which such conduct will not occur.  Under existing case law, however, any institutional failure in this regard does not violate substantive due process.  See Daniel B. Weddle, Bullying in Schools: The Disconnect Between Empirical Research and Constitutional, Statutory, And Tort Duties to Supervise, 77 Temple L. Rev. 641 (2004).